**Slip Op. 15-**111

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| UNITED STATES, | : |
| Plaintiff, | : Before: Nicholas Tsoucalas, |
| v. | :              Senior Judge |
| JEANETTE PACHECO, | : Court No.: 14-00289 |
| Defendant, | : |
| AND | : |
| INDIVIDUAL A, | : |
| Intervenor. | : |

**OPINION**

[Plaintiff's Motion for Entry of Default Judgment is granted.]

Dated: September 28, 2015
Amended: February 11, 2016

Stephen C. Tosini, Senior Trial Counsel, Department of Justice, Civil Division, Commercial Litigation Branch, of Washington, D.C., for Plaintiff.  With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.

Luis F. Arandia, Jr. and Robert T. Givens, Givens & Johnston, PLLC, of Houston, TX, for Intervenor.

**Tsoucalas, Senior Judge**: Before the court is United States' ("Plaintiff") Motion for Default Judgment seeking $2,651,312.18 in civil penalties plus interest, costs, and fees against Defendant Jeanette Pacheco ("Pacheco") for fraud under section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. §

1592 (2012).[1] Pl.'s Mot. for Entry of Default J. at 6, July 7, 2015, ECF No. 9 ("Pl.'s Br."). For the following reasons, Plaintiff's motion is granted.

From October 29, 2009, to approximately December 23, 2009, Pacheco entered thirty six entries of dried peppers into the United States from Mexico. Pl.'s Br. Decl. of Liza Lopez at ¶ 2, June 22, 2015. Individual A was the licensed customs broker for each entry.[2] Id. at ¶ 3. Homeland Security Investigations conducted an investigation in which they discovered that Individual A approached Pacheco in a nightclub and told her that Individual A had a way to make "fast cash." Pl.'s Br. Report of Investigation Ex. B, at 2. Subsequently, Individual A gave Pacheco $200, and in exchange, she provided Individual A with a power of attorney to allow Individual A to use her name to conduct customs business on Individual A's own behalf. Id.

The entry documents submitted to Customs and Border Protection ("CBP") declared a transaction value of approximately $0.11 per kilogram of dried peppers. Pl.'s Br. Decl. of Liza Lopez

---

[1] Further citations to the Tariff Act of 1930 are to the relevant portions of Title 19 of the U.S. Code, 2012 edition, and all applicable amendments thereto, unless otherwise noted.
[2] Individual A filed a Motion to Intervene for the limited purpose of amending the Court's Opinion and removing Individual A's name from the Opinion. Initially, Plaintiff opposed Individual A's Motion; however, thereafter, Plaintiff stated in a teleconference that it no longer opposed the Motion. The Court granted the Motion.

at ¶ 5.  The median transaction value for identical or similar shipments of dried peppers is $3.75 per kilogram.  Id. at ¶ 7.  Based on the aforementioned transaction values, CBP was concerned that the dried peppers were undervalued, and consequently it requested documents to verify the claimed transaction value through proof of payment and/or the terms of sale agreement for the entries.  Id. at ¶ 6.  Pacheco failed to provide documentation to corroborate the declared transaction value of $0.11 per kilogram.  Id. at ¶ 8.  Consequently, CBP appraised the entries using a transaction value for similar merchandise to determine a dutiable value of $2,285,550.00.  Id. at ¶ 9.

The Food and Drug Administration (FDA) issued a Notice of FDA Action refusing these entries as adulterated under section 402 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 342 (2012)[3] and barred them from entering the commerce of the United States under 21 U.S.C. § 381(a).  Id. at ¶ 12.  The Notice of FDA Action required Pacheco to redeliver the entries for exportation or destruction.  Id.  Pacheco failed to redeliver the goods.  Id. at ¶ 13.

---

[3] Further citations to the Federal Food, Drug, and Cosmetic Act are to the relevant portions of Title 21 of the U.S. Code, 2012 edition, and all applicable amendments thereto, unless otherwise noted.

As a result of Pacheco's failure to redeliver the entries, CBP assessed claims for liquidated damages for the subject entries at the $0.11 per kilogram figure provided by Pacheco for a total of $184,419.00.  Id. at ¶ 10; Pl.'s Br. Jeanette Pacheco Claims for Liquidated Damages, Ex. D.

CBP issued a Pre-Penalty notice to Pacheco on April 16, 2013, informing her that it sought a monetary penalty in the amount of $2,651,312.18 for fraud under 19 U.S.C. § 1592.  Pl.'s Br. Pre-Penalty Notice Ex. F, at 1.

On April 24, 2013, CBP issued a penalty notice to Pacheco seeking $2,651,312.18 for fraud under 19 U.S.C. § 1592.  Pl.'s Br. Penalty Notice Ex. G, at 1-2.  CBP sent to Pacheco demands for payment of the penalty on May 7, 17, & 30, 2013, and June 14, 2013.  Pl.'s Br. Decl. of Liza Lopez at ¶ 18.  To date, CBP has not received any payments from Pacheco.  Id. at ¶ 19.

Plaintiff filed the instant action on October 29, 2014.  Compl., Oct. 29, 2014, ECF No. 2.  Pacheco failed to answer or otherwise respond to the complaint.  As a result, the Clerk of Court entered Pacheco's default on May 19, 2015.  Entry of Default, May 19, 2015, ECF No. 8.  Plaintiff now moves for entry of default judgment.  Pl.'s Br. at 1.

## JURISDICTION

The court possesses jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1582(1) (2012) over

this civil penalty action brought by the United States under 19 U.S.C. § 1592.

## DISCUSSION

Pursuant to 19 U.S.C. § 1592(e)(1), the Court determines all issues de novo, including the amount of any penalty. 19 U.S.C. § 1592(e)(1).  In evaluating a motion for a default judgment, the Court accepts as true all well-pled facts in the complaint but must reach its own legal conclusions. United States v. Callanish Ltd., 37 CIT ____, ____, Slip Op. 13-43 (Mar. 28, 2013) (citing Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  "Although a defendant's default acts as an admission of liability for all well-pled facts in the complaint, it does not admit damages."  United States v. Freight Forwarder Int'l, 39 CIT ____, ____, 44 F. Supp. 3d 1359, 1362 (2015) (citing Greyhound Exhibit Grp. Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)).  "An entry of default alone . . . does not suffice to entitle a plaintiff to the relief that it seeks." United States v. Country Flavor Corp., 36 CIT ____, ____, 825 F.Supp. 2d 1296, 1301 (2012).  "Even after an entry of default, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'"  Id. (quoting 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2688, p. 63 (3d ed. 1998)).  "Because section 592(e) directs that

the court determine 'de novo' the amount of penalty to be recovered, the penalty cannot be considered a 'sum certain' to which plaintiff has established its entitlement as a matter of right." United States v. Inner Beauty Int'l (USA) Ltd., 35 CIT____, ____, Slip Op. 11-148 (Dec. 2, 2011).

In the case at bar, the Clerk of Court has entered the Defendant's Default, and Plaintiff supported the Motion for Default Judgment with an affidavit showing the amount due. Entry of Default; Compl. at ¶27, Ex. B; Pl.'s Br. Decl. of Liza Lopez. Thus, the court must address whether the unchallenged facts constitute a legitimate cause of action and what amount, if any, should be awarded Plaintiff.

**1. The Unchallenged Facts Constitute a Legitimate Cause of Action Per § 1592**

Under 19 U.S.C. § 1592(a)(1) it is unlawful for a person, by fraud to enter, introduce, attempt, or aid or abet any other person in introducing merchandise into the commerce of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or any omission which is material. 19 U.S.C. §1592(a)(1). "A document, statement, act, or omission is material if it has the natural tendency to influence or is capable of influencing agency action including, but not limited to a . . .

.[d]etermination of the classification, appraisement, or admissibility of merchandise . . . .") 19 C.F.R. Part 171, appendix B § (B) (2015) ("Penalty Guidelines").

In the instant case, the misrepresented entered value was material because it influenced CBP's decision regarding the admissibility of the peppers. Restricted merchandise such as dried peppers are subject to inspection, may be conditionally released, or the shipment may be placed on hold and later refused entry. Customs may request redelivery of the refused shipment. A refusal to comply with the redelivery requirement may result in Customs assessing liquidated damages at three times the value of the merchandise. 19 C.F.R. § 141.113(c)(3) (2015). Customs assessed liquidated damages in the amount of $184,419.00 relying on the low values provided by the importer. Pl.'s Br. Jeanette Pacheco Claims for Liquidated Damages Ex. D, at 1-2. Had the importer given the correct value of $3.75 per kilogram, Customs would have assessed liquidated damages at $6,856,650.00 and required that the importer post a bond in the amount of $6,856,650.00 or refused entry to the merchandise. Pl.'s Br. Decl. of Liza Lopez Ex. A, at ¶ 11. Rather, Pacheco misrepresented the value of the peppers, procured a bond at a significantly lower amount, and sold the merchandise for consumption in the U.S. Id.

Furthermore, by providing the power of attorney for $200 so that Individual A could conduct customs business on Individual

A's own behalf, Pacheco aided and abetted Individual A's fraud upon Customs. Pl.'s Br. Report of Investigation Ex. B, at 2. Having given Individual A a power of attorney, Pacheco, as principal, can be held liable for her agent Individual A's actions whether or not she authorized the specific unlawful conduct which constituted the violation of section 1592. See United States v. Pan Pac. Textile Grp. Inc., 29 CIT 1013, 1022-23, 395 F. Supp. 2d 1244, 1252 (2005) (holding that when determining a principal's liability, it is irrelevant whether or not the principal authorized their agent's conduct which constituted the violation of section 1592).

Thus, the court finds that Plaintiff has demonstrated that the unchallenged facts constitute a legitimate cause of action under 19 U.S.C. § 1592.

**2. Amount of Damages**

Fraud is punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise. 19 U.S.C. § 1592(c)(1). A "Plaintiff is not necessarily entitled to be awarded a judgment for the maximum penalty available under section 592 as a 'sum certain,' as that term is used in Rule 55 . . . It is appropriate that the court consider the facts and circumstances as shown in plaintiff's submissions." Inner Beauty, 35 CIT at ____. The Court examines whether there are aggravating or mitigating factors present in assessing the penalty. Id. Although not

Case 1:14-cv-00289-NT   Document 32   Filed 02/11/16   Page 9 of 10
Court No. 14-00289                                                    Page 9

binding on the Court, the guidelines published by Customs are informative on the general question of what constitutes aggravating and mitigating circumstances. Id. Under those guidelines, for a Non-Duty Loss Violation, "[a] penalty disposition greater than 80 percent of the dutiable value may be imposed in a case involving an egregious violation, or a public health and safety violation, or due to the presence of aggravating factors, but the amount may not exceed the domestic value of the merchandise." Penalty Guidelines §(F)(2)(a)(ii). Undervaluation of duty-free merchandise such as dried peppers from Mexico constitutes a non-duty loss violation. Id. at §(D)(2).

Providing misleading information to Customs concerning the section 1592 violation and failing to comply with a lawful demand for records are aggravating factors that permit a penalty of up to the domestic value of the merchandise. Id. at §(H)(3),(7). In this case, Pacheco initially lied to investigators about whether the peppers were hers, and she failed to comply with Customs' lawful demand for documentation verifying the declared transaction value of $0.11 per kilogram. Pl.'s Br. Report of Investigation Ex. B, at 1-2; Request for Information Ex. C, at 1-2; Decl. of Liza Lopez Ex. A, at ¶ 8. Thus, the court finds that aggravating factors are present in this case.

Additionally, the following factors may be considered in mitigation of the penalty: contributory customs error (where

Customs provides Defendant with misleading or erroneous advice in writing); Defendant's cooperation with the investigation; immediate remedial action taken by Defendant; inexperience in importing (only where the violation is not due to fraud); prior good record (excluding fraud violations); inability to pay the Customs penalty; and Customs' failure to notify Defendant of a violation, in non-fraud cases, where Customs had actual knowledge of a violation. Penalty Guidelines §(G).  The court finds that there are no mitigating factors present on the record before the court.

The court grants Plaintiff's Motion for Default Judgment and awards Plaintiff the domestic value of the merchandise, in the amount of $2,651,312.18 due to the presence of aggravating factors and the absence of mitigating factors, plus post-judgment interest as provided by law. Plaintiff shall bear its own costs and fees.

/s/ Nicholas Tsoucalas
**Nicholas Tsoucalas
Senior Judge**

**Dated:** February 11, 2016
**New York, New York**